**Gary L. SCOTT, Plaintiff,**

v.

**LIBERTY FINANCE CO., Defendant.**

Civ. No. 73–0–349.

United States District Court,
D. Nebraska.

June 24, 1974.

Robert S. Catz, Omaha, Neb., for plaintiff.

Robert P. Miller, Omaha, Neb., for defendant.

## MEMORANDUM

DENNEY, District Judge.

This matter is before the Court on plaintiff's motion for summary judgment [Filing #10]. Oral arguments have been heard, written arguments submitted, and the Court is ready to render its decision.

In this action, the plaintiff charges the defendant with violations of the Consumer Credit Protection Act, 15 U.S.C. § 1601 et seq.; Regulation Z of the Federal Reserve Board; 12 C.F.R. Part 226; and certain Nebraska statutes. The motion for summary judgment is addressed to only those claims arising under the Consumer Credit Protection Act and Regulation Z. Jurisdiction is established pursuant to the Act, 15 U.S.C. § 1640(e).

Plaintiff alleges that on September 29, 1972, he entered into a consumer credit transaction as a co-maker for a loan with the defendant. In conjunction with this transaction, defendant furnished plaintiff with certain disclosures as required by Regulation Z. Plaintiff alleges that the disclosures by the defendant were violative of the Consumer Credit Protection Act and Regulation Z in the following respects:

(1) That the defendant failed to adequately identify the method to be used in computing the unearned portion of the finance charge in the event of prepayment of the obligation.

(2) That the defendant failed to disclose that a security interest in after acquired property of the same character does not attach as against household and consumer goods.

(3) That the defendant failed to properly and accurately disclose the total and periods of payments of the obligation.

(4) That the defendant failed to adequately disclose the amount or method to be used in computing default or delinquency charges in the event of a late installment payment.

Turning to the first of the allegations listed above, the requirement for the disclosure of the method to be used in computing the unearned portion of the finance charge in the event of prepayment of the obligation is contained in 12 C.F.R. § 226.8(b). That section provides in pertinent part as follows:

In any transaction subject to this section, the following items, as applicable, shall be disclosed: . . . .

(7) Identification of the method of computing any unearned portion of the finance charge in the event of prepayment of the obligation and a statement of the amount or method of computation of any charge that may be deducted from the amount of any rebate of such unearned finance charge that will be credited to the obligation or refunded to the customer.[1]

The disclosure which the defendant made and which it alleges complies with this section reads as follows:

(M) REBATE ON PREPAYMENT: In determining the rebate to be made when required by law on prepayment, the unearned portion of the Finance Charge will be computed by applying the Rule of 78ths as of the preceding installment due date if any and if prepayment is made within 15 days after such due date, or otherwise as of the next installment due date; provided

---

1. Section 226.8(b)(7) was amended effective January 1, 1974, but that amendment does not affect this case.

that if prepayment occurs before the first installment due date, such unearned portion will be the entire amount of the Finance Charge as originally computed less the Finance Charge recomputed at the agreed rate on the actual balances from time to time outstanding, for the respective periods thereof. There will be deducted from the rebate all unpaid default charges (see (N) below).

In measuring the disclosure made by the defendant against the disclosure required by Regulation Z, it is helpful to briefly review the overall purpose of the Consumer Credit Protection Act. The Congressional purpose of the Act is stated in 15 U.S.C. § 1601 as follows:

. . . It is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit.

■ With respect to the general area of prepayment of obligations, Regulation Z, promulgated by the Federal Reserve Board pursuant to the Consumer Credit Protection Act, has two subparagraphs dealing with required disclosures upon prepayment of an obligation which is other than open end. The subparagraph discussed above, 12 C.F.R. § 226.8(b)(7), deals with obligations involving precomputed finance charges, and subparagraph (6), 12 C.F.R. § 226.8(b)(6), concerns obligations which do not involve precomputed finance charges.[2] Since these two subparagraphs deal with the same general subject, prepayment penalties, and since the purpose of the Consumer Credit Protection Act is to enable consumers to compare credit terms, it seems clear that these two subparagraphs should be considered together. In analyzing these two subparagraphs, the Court finds that the disclosures contemplated by both are similar. The lender must disclose any charge, or the method of determining

any charge, which is not related to the finance charge earned on an obligation when it is prepaid.

If an obligation does not involve precomputed finance charge, the problem is simplified since any charge over and above the outstanding principal balance would be a penalty. If an obligation does involve precomputed finance charges, the problem is more difficult, since the outstanding contract balance at any given time is made up of principal, earned interest, and unearned interest. In such a case, if an individual prepays the obligation, the unearned finance charge included in the contract balance must be computed before a determination can be made as to whether a penalty is involved.

■ With this background, 12 C.F.R. § 226.8(b)(7) can now be analyzed more fully. The disclosure contemplated by that section consists of two items. The first of these items is the identification of the method used to determine unearned finance charge. As stated above, the prepayment penalty cannot be ascertained until the unearned interest is computed. The first disclosure is therefore a preliminary step and has no independent value to the consumer in comparing credit terms available to him. To make such a comparison, the consumer needs to proceed to the second disclosure required by 12 C.F.R. § 226.8(b)(7), ". . . a statement of the amount or method of computation of any charge that may be deducted from the amount of any rebate of such unearned finance charge that will be credited to the obligation or refunded to the customer."

The second disclosure provides the consumer with the information he needs to compare credit terms. For example, if a consumer is considering loans from two different lendors, the terms of which are similar except for the fact that one loan is extended by applying precomputed finance charges and one by applying an interest rate[3] to an out-

---

2. See 12 C.F.R. 226.818(b).

3. In the instant case, different rates were applied to different portions of the principal; however, this fact does not affect the theory of this comparison.

standing principal, and the fact that the prepayment penalties are different, the consumer can compare the two loans intelligently only if he is provided with either the amount of the penalties or a method of computing the amount of the penalties. The identification of the method used to compute unearned interest is important only in that it does, in fact, compute unearned interest. An informed consumer is surely not going to base his selection of loans on the method used to compute unearned finance charges.

Having considered the purpose of the disclosures contemplated by the Consumer Credit Protection Act and Regulation Z, the Court will now consider the facts of the instant case. The pleadings indicate that the defendant agreed to advance to the principal debtors, Royce and Gloria Martos, the sum of $973.02. Interest on this sum was to be computed at the maximum lawful rate of 30% per annum on the first $500.00, 24% per annum on the next $200.00, and 18% per annum on the remaining balance. As permitted by Nebraska law, the precomputed finance charge for the total duration of the loan $274.97, was added to the principal of the loan. The debtors agreed to repay the total obligation in 24 equal monthly installments of $52.00, a total payment of $1,248.00. The Court has, in Appendix A, computed the finance charge, the principal outstanding, and the contract balance outstanding for each of the installment periods.

In Appendix B, the Court has shown the cumulative earned and unearned finance charge for the various installment periods and, in addition, has computed a rebate of unearned finance charge based on the computational method identified by the term, sum of the digits, or rule of 78ths. It is readily apparent that the rule of 78ths does not, in fact, compute unearned finance charge and that if, upon prepayment of the obligation, the amount of the rebate of unearned finance charge is based upon the rule of 78ths, the rebate will be less than the unearned finance charge. In other words, the rebate of unearned finance charge based on the rule of 78ths imposes a prepayment penalty on the consumer. The fact that the rule of 78ths does impose a prepayment penalty has been recognized by most courts which have considered the problem. Kenney v. Londes Financial Group, Inc., 349 F.Supp. 939, 946 [D.C.1972]; Bone v. Hibernia Bank, 493 F.2d 135 [9 Cir. 1974].

Having established that the rule of 78ths does not calculate the unearned finance charge, the Court will now examine whether or not such method will result in a fair approximation of the unearned finance charge. The Ninth Circuit Court of Appeals, in Bone v. Hibernia Bank, *supra,* p. 137, concluded that:

> The results obtained by the Rule of 78's method closely approximate those of the "actuarial" method in which the rebate bears a more direct relationship to the amount of money received and the time for which it is used, and in which "true" interest yields are produced.

To evaluate the accuracy of the rule of 78ths, the Court has prepared Appendix C. This appendix contains accuracy figures for the end of all installment periods for the rule of 78ths, as compared to the unearned finance charge. These calculations show that the error resulting from the use of the rule of 78ths varies in this case from a high of 27.6% at the 24th installment to a low of 1.3% at the first installment. The absolute error reaches a peak of $16.31 at the ninth installment. Given this magnitude of error, the Court does not agree with the conclusion of the Ninth Circuit Court of Appeals in the *Bone* case. The rule of 78ths does not produce results approximating unearned interest in this case. In making this determination, the Court is guided by other provisions of Regulation Z concerning accuracy. Section 226.5(b)(1)

requires disclosure of interest rates to the nearest ¼ of 1%.

In considering the accuracy of the rule of 78ths, the Court admittedly has considered only the case at bar. The accuracy of the method will, of course, vary as the parameters of the loan vary. However, the nature of the rule and present interest rates dictate that it will always result in a rebate of less than unearned finance charge. If it did not, the Court is certain that lending institutions would not utilize it.

■ The Court concludes that the bare disclosure that unearned interest will be computed according to the rule of 78ths does not fulfill the disclosure requirements of 12 C.F.R. § 226.8(b)(7). As discussed above, the rule of 78ths does not compute unearned interest and results in a prepayment penalty. To hold otherwise, would produce anomalous results. For example, if a lender extends credit and prepayment is made by applying the agreed upon interest rate to the outstanding principal, it would have to disclose under 12 C.F.R. § 226.8 (b)(6) any penalty which could be imposed upon prepayment of the loan. If a flat $5.00 charge were added to outstanding principal upon prepayment, such charge would have to be disclosed. On the other hand, under the facts of the instant case, a prepayment at the 9th installment would result in a penalty of $16.23, which, if the rule of 78ths were held to be a valid disclosure, would be undisclosed. Keeping in mind the purpose of the Consumer Credit Protection Act, the meaningful disclosure of the cost of credit so that consumers can compare various credit terms, this result would be inconsistent with the stated Congressional purpose.

■ Having determined the disclosure in this case does not fulfill the requirements of 12 C.F.R. § 226.8(b)(7), the Court will now discuss interpretative rule 12 C.F.R. § 226.818, 38 F.R. 12,202. That rule states in relevant part:

Section 226.8(b)(7) requires "identification" of the rebate method used on precomputed contracts. Many State statutes provide for rebates of unearned finance charges under methods known as the "Rule of 78's" or "sum of the digits" or other methods. In view of the fact that such statutory provisions involve complex mathematical descriptions which generally cannot be condensed into simple accurate statements, and which if repeated at length on disclosure forms could detract from other important disclosures, the requirement of rebate "identification" is satisfied simply by reference by name to the "Rule of 78's" or other method, as applicable.

The interpretative rule refers to "identification of the rebate method" when discussing 12 C.F.R. § 226.8(b)(7). In reading Section 226.8(b)(7), the Court finds no reference to identification of the rebate method. The Court finds that the identification relates to a method of computing any unearned finance charge. The terms unearned finance charge and rebate are not synonymous. As stated above, the Court reads Section 226.8(b)(7) to require disclosure of the penalty or method of determining the penalty which may result from prepayment of an obligation. Such penalty is determined by subtracting from the unearned interest the amount of the rebate of the unearned interest.

Defendant's argument concerning the booklet entitled "What You Ought to Know About Federal Reserve Regulation Z Truth in Lending Consumer Credit Act Disclosure" prepared by the Board of Governors of the Federal Reserve Board is unpersuasive. *See* Johnson v. Associates Finance, Inc., 369 F.Supp. 1121, 1123 [D.C.1974].

■ Plaintiff's second allegation concerns disclosures required by 12 C.F.R. § 226.6(c). This section relates to security interests retained by the creditor. The Court finds that such disclosures are not required under the facts of this case. The plaintiff was a co-maker on a note and the defendant did not retain any security interest in plaintiff's household or consumer goods.

Plaintiff's third allegation concerns the disclosure of the total and periods of loan payments required by 12 C.F.R. § 116.8(b)(3). In this regard, the defendant made the following disclosures:

(I) PAYMENT SCHEDULE:

24 consecutive monthly installments of *$52.00* each, due on the *12th* day of the month beginning with the month of *November 1972,* provided that last installment, due *November 12, 1974,* will be *$52.00.*

Plaintiff contends that there are 25 installments between the dates disclosed and, therefore, an improper disclosure has been made by the defendant. Plaintiff is correct; subject, however to the bona fide error defense of 15 U.S.C. § 1640(c).

Plaintiff's final allegation is that the defendant has failed to meaningfully disclose the amount or methods to be used in computing default or delinquency charges in the event of a late payment. The Court finds this allegation to be without merit. The defendant has disclosed the method to be used in computing a late charge. The language of defendant's disclosure comes directly from Neb.Rev.Stat. § 45–137 (2)(d) (Reissue of 1968).

During oral arguments on this motion, plaintiff and defendant agreed to the fact that the defendant was entitled to submit evidence on the issue of the bona fide error defense contained in 15 U.S.C. § 1640(c). The order granting plaintiff's motion for summary judgment will allow further proceedings on that defense.

The Court's holding in this case is rather harsh on the defendant. If the Court had a choice, it would not allow recovery in this case. The evidence shows that the defendant relied on interpretations issued by the Federal Reserve Board. Unfortunately, such reliance is not a valid defense in this case. In this regard, a proposed Amendment to the Consumer Credit Protection Act would provide a defense for good faith compliance. Truth in Lending Annual Report to Congress For the Year 1973 by The Board of Governors of the Federal Reserve System, CCH Installment Credit Guide Consumer Credit, p. 33.

An order granting partial summary judgment will be entered contemporaneously with this Memorandum.

APPENDIX A

| Period | Payment | Finance Charge | Payment to Principal | Unpaid Principal Balance | Unpaid Contract Balance |
|---|---|---|---|---|---|
| 1 | 52.00 | 18.60 | 33.40 | 939.62 | 1196.00 |
| 2 | 52.00 | 18.09 | 33.91 | 905.71 | 1144.00 |
| 3 | 52.00 | 17.59 | 34.41 | 871.30 | 1092.00 |
| 4 | 52.00 | 17.07 | 34.93 | 836.37 | 1040.00 |
| 5 | 52.00 | 16.55 | 35.45 | 800.92 | 988.00 |
| 6 | 52.00 | 16.01 | 35.99 | 764.93 | 936.00 |
| 7 | 52.00 | 15.47 | 36.53 | 728.40 | 884.00 |
| 8 | 52.00 | 14.93 | 37.07 | 691.33 | 832.00 |
| 9 | 52.00 | 14.37 | 37.63 | 653.70 | 780.00 |
| 10 | 52.00 | 13.81 | 38.19 | 615.51 | 728.00 |
| 11 | 52.00 | 13.23 | 38.77 | 576.74 | 676.00 |
| 12 | 52.00 | 12.65 | 39.35 | 537.39 | 624.00 |
| 13 | 52.00 | 12.06 | 39.94 | 497.45 | 572.00 |
| 14 | 52.00 | 11.45 | 40.55 | 456.90 | 520.00 |
| 15 | 52.00 | 10.64 | 41.36 | 415.54 | 468.00 |
| 16 | 52.00 | 9.81 | 42.19 | 373.35 | 416.00 |
| 17 | 52.00 | 8.97 | 43.03 | 330.32 | 364.00 |
| 18 | 52.00 | 8.11 | 43.89 | 286.43 | 312.00 |
| 19 | 52.00 | 7.16 | 44.84 | 251.59 | 260.00 |
| 20 | 52.00 | 6.04 | 45.96 | 195.63 | 208.00 |
| 21 | 52.00 | 4.89 | 47.11 | 148.52 | 156.00 |
| 22 | 52.00 | 3.71 | 48.29 | 100.23 | 104.00 |
| 23 | 52.00 | 2.51 | 49.49 | 50.74 | 52.00 |
| 24 | 52.00 | 1.26 | 50.74 | .00 | .00 |
| | Total | 274.98 | 973.02 | | |

## APPENDIX B

| Payment Period | Cumulative Earned Finance Charge | Cumulative Unearned Finance Charge | Rebate based on Rule of 78ths |
|---|---|---|---|
| 1 | 18.60 | 256.39 | 252.99 |
| 2 | 36.69 | 238.30 | 231.91 |
| 3 | 54.28 | 220.71 | 211.74 |
| 4 | 71.35 | 203.64 | 192.49 |
| 5 | 87.90 | 187.09 | 174.16 |
| 6 | 103.91 | 171.08 | 156.74 |
| 7 | 119.38 | 155.61 | 140.24 |
| 8 | 134.31 | 140.68 | 124.66 |
| 9 | 148.68 | 126.31 | 110.00 |
| 10 | 162.49 | 112.50 | 96.25 |
| 11 | 175.72 | 99.27 | 83.41 |
| 12 | 188.37 | 86.62 | 71.50 |
| 13 | 200.43 | 74.56 | 60.50 |
| 14 | 211.88 | 63.11 | 50.41 |
| 15 | 222.52 | 52.47 | 41.25 |
| 16 | 232.33 | 42.66 | 33.00 |
| 17 | 241.30 | 33.69 | 25.66 |
| 18 | 249.41 | 25.58 | 19.25 |
| 19 | 256.57 | 18.42 | 13.75 |
| 20 | 262.61 | 12.38 | 9.17 |
| 21 | 267.50 | 7.49 | 5.50 |
| 22 | 271.21 | 3.78 | 2.75 |
| 23 | 273.72 | 1.27 | .92 |
| 24 | 274.98 | 0 | 0 |

## APPENDIX C

| Payment Period | Unearned Finance Charge | Rebate by Rule of 78ths | Difference | Per cent Error |
|---|---|---|---|---|
| 1 | 256.39 | 252.99 | 3.40 | 1.3% |
| 2 | 238.30 | 231.91 | 6.39 | 2.7% |
| 3 | 220.71 | 211.74 | 8.97 | 4.1% |
| 4 | 203.64 | 192.49 | 11.15 | 5.5% |
| 5 | 187.09 | 174.16 | 12.93 | 6.9% |
| 6 | 171.08 | 156.74 | 14.34 | 8.4% |
| 7 | 155.61 | 140.24 | 15.37 | 9.9% |
| 8 | 140.68 | 124.66 | 16.02 | 11.4% |
| 9 | 126.31 | 110.00 | 16.31 | 12.9% |
| 10 | 112.50 | 96.25 | 16.25 | 14.4% |
| 11 | 99.27 | 83.41 | 15.86 | 16.0% |
| 12 | 86.62 | 71.50 | 15.12 | 17.5% |
| 13 | 74.56 | 60.50 | 14.06 | 18.9% |
| 14 | 63.11 | 50.41 | 12.70 | 20.1% |
| 15 | 52.47 | 41.25 | 11.20 | 21.4% |
| 16 | 42.66 | 33.00 | 9.66 | 22.6% |
| 17 | 33.69 | 25.66 | 8.03 | 23.8% |
| 18 | 25.58 | 19.25 | 6.33 | 24.8% |
| 19 | 18.42 | 13.75 | 4.67 | 25.4% |
| 20 | 12.38 | 9.17 | 3.21 | 25.9% |
| 21 | 7.49 | 5.50 | 1.99 | 26.6% |
| 22 | 3.78 | 2.75 | 1.03 | 27.3% |
| 23 | 1.27 | .92 | .35 | 27.6% |
| 24 | 0 | 0 | 0 | 0 |