PUBLIC FINANCE CORPORATION, Plaintiff and Counterdefendant-Appellee and Cross-Appellant, v. DAVID R. RIDDLE et al., Defendants and Counterplaintiffs-Appellants and Cross-Appellees.

Third District    No. 79-533

Opinion filed April 29, 1980.

418

Barry M. Barash, of Barash & Stoerzbach, of Galesburg, for appellants.

Barney Olson, II, of Galesburg, for appellee.

Mr. JUSTICE STOUDER delivered the opinion of the court:

On March 22, 1973, Public Finance Corporation (Public) filed a complaint in the circuit court of Knox County against the defendants, David and Beverly Riddle (Riddles), alleging that the Riddles owed them $1,142.70 based upon a note executed on December 8, 1969, in the original face amount of $1,759.45. On March 3, 1975, the case was dismissed for want of prosecution. On February 27, 1978, Public filed a motion to reinstate the case, and on March 10, 1978, an order was entered reinstating it.

The Riddles answered the reinstated complaint, admitting everything except the amount due on the note. They also filed a counterclaim against Public alleging various violations of the Federal Truth in Lending Act (TILA) (15 U.S.C. §1601 *et seq.* (1976)), the Illinois Consumer Installment Loan Act (Large Loan Act) (Ill. Rev. Stat. 1977, ch. 74, par. 51 *et seq.*), the Illinois Consumer Fraud Act (Ill. Rev. Stat. 1977, ch. 121½, par. 261 *et seq.*), and the Uniform Commercial Code (UCC) (Ill. Rev. Stat. 1977, ch. 26, par. 1—101 *et seq.*), regarding the loan Public sued on and another loan they made from Public. Public filed an answer to the counterclaim denying any violations.

Both parties then filed cross motions for summary judgment. On

August 10, 1978, the trial court entered an order granting summary judgment for the Riddles with regard to the violations of Illinois law only. The trial court did not rule on the Federal violations or damages. Both sides appealed and the case was briefed and argued before this court in March 1979. We dismissed the appeal, holding that the trial court had not rendered an appealable order because it had not adjudicated the Riddles' claims based upon alleged violations of TILA. On July 6, 1979, the trial court entered a judgment in the Riddles' favor and against Public in which (1) the Riddles were awarded judgment against Public for violations of the Illinois Large Loan Act in the amount of $1,747.60 together with attorney's fees of $500; (2) the balance due Public was stipulated to be $1,142.70; (3) the net judgment in the Riddles' favor was $1,104.90 plus court costs; (4) the court entered judgment in Public's favor regarding violations of TILA holding that, based upon *Ninth Liberty Loan Corp. v. Hardy* (1977), 53 Ill. App. 3d 601, 368 N.E.2d 971, "* * * no damages are due to the consumers by virtue of any violation of the Federal Truth in Lending Act inasmuch as the same is duplicitous with the Illinois Act, on which violations were found."

The Riddles appeal from that portion of the trial court's judgment denying them recovery for violations of TILA. Public cross-appeals, seeking to overturn that portion of the trial court's judgment granting recovery against it.

We first consider whether the loans from Public to the Riddles violated Illinois law. The first loan from Public to the Riddles was entered into on May 5, 1969. The second loan was entered into on December 8, 1969. Public contends that the May 5 loan could not have contravened the Large Loan Act because the Large Loan Act did not become effective until October 7, 1969. We have no quarrel with this contention. However, the trial judge specifically found that the May 5 loan violated section 16 of the Large Loan Act, (Ill. Rev. Stat. 1969, ch. 74, par. 66(g)), which was in effect prior to May 5, 1969. Therefore, we believe that there are no problems regarding the application of Illinois law to the May 5 loan.

■■ Public next contends that the trial court erred in finding that the loans violated the Large Loan Act and the UCC. We disagree. The trial judge held that the security interest was overbroad and violated the UCC. We see no reason to disturb that holding. The trial judge also held that the disclosure requirements of existing Illinois statutes were violated. Public claims that its disclosure statements were not violative of State law in that although the security interests claimed were overbroad, the disclosure statements accurately describe them. This argument misses the point behind the statute. The security agreement claimed an impermissible interest. The disclosure statement described the agreement exactly, telling the Riddles that Public had a security interest it couldn't have.

Therefore, Public's disclosure statements served to mislead the Riddles as to the security interest Public had. (See *Holmes v. No. 2 Galesburg Crown Finance Corp.* (1979), 77 Ill. App. 3d 785, 396 N.E.2d 583.) For this reason, we believe the trial judge ruled correctly that the disclosure statements violated Illinois law.

■■ Having held that both loans violated State law, we next turn to the question of whether or not the loans violated the Federal Truth in Lending Act. Initially it must be determined whether TILA was applicable to both loans. The Federal Consumer Protection Act (15 U.S.C. §1601 *et seq.* (1976)), of which TILA is a part, was enacted and effective May 29, 1968. However, section 504 of the act specifically states that chapters 2 and 3 of title I of the Act did not take effect until July 1, 1969. Chapter 2, consisting of sections 121 through 135, is the section which deals with credit transactions and disclosure. Since the first loan between Public and the Riddles was entered into on May 5, 1969, prior to the provisions on credit transactions and disclosures becoming effective, TILA is not applicable to it. The second loan between Public and the Riddles was entered into on December 8, 1969, and therefore TILA is applicable to it.

Since TILA is applicable to the December 8, 1969, loan, the next issue is whether or not the TILA violation could be pled as a counterclaim despite the fact that the statute of limitations had run, barring the Riddles from initiating an action under TILA. Section 130(e) of TILA (15 U.S.C. 1640(e)) provides:

"Any action under this section may be brought in any United States District Court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation."

The occurrence in the instant case took place on December 8, 1969. The counterclaim by the Riddles was not filed until April 17, 1978. Public contends that since the statute of limitations had expired, the Riddles should be barred from asserting the cause of action in a counterclaim. We disagree.

We find the reasoning in *Wood Acceptance Co. v. King* (1974), 18 Ill. App. 3d 149, 309 N.E.2d 403, persuasive here. In *Wood* the loan company filed an action to recover a deficiency judgment after repossession of an automobile. Defendant filed an answer and counterclaimed for damages under TILA. The trial court dismissed the counterclaim because it had not been filed within one year. The appellate court reversed, relying on section 17 of the Limitations Act (Ill. Rev. Stat. 1971, ch. 83, par. 18), which provides:

"A defendant may plead a set-off or counter claim barred by the statute of limitations, while held and owned by him, to any action, the cause of which was owned by the plaintiff or person under

whom he claims, before such set-off or counter claim was barred, and not otherwise * * *."

The court noted that TILA is intended to safeguard the consumer in connection with the utilization of credit and that the enforcement of TILA is accomplished largely through civil suits. Congress assumed that the civil penalty section would secure substantial compliance with TILA, and for this reason no provision was made for investigative or enforcement machinery at the Federal level. The court stated that the placing of such responsibility on often unknowledgeable consumers lent support to the conclusion that the penalty sought to be imposed under TILA should not be circumvented where the debtor's obligation is not stale and is raised by way of a section 17 counterclaim arising out of the same transaction. Therefore, the court concluded that the one-year limitation in which to bring the Federal right is not such an integral part of TILA as to outweigh the combined purposes of that act and section 17 of the Limitations Act.

Public contends that *Wood* is inapplicable in that it was decided on February 22, 1974, prior to an October 28, 1974, amendment to TILA. That amendment, section 130(h) (15 U.S.C. §1640(h) (1976)), provides:

"A person may not take any action to offset any amount for which a creditor is potentially liable to such person under subsection (a)(2) of this section against any amount owing to such creditor by such person, unless the amount of the creditor's liability to such person has been determined by judgment of a court of competent jurisdiction in an action to which such person was a party."

Public argues that this section significantly alters TILA and since *Wood* did not consider this section, it should not be followed in the instant case. While no Illinois courts have dealt with the effect of section 130(h) on the rationale expressed in *Wood*, other jurisdictions have held that it does not affect the outcome of *Wood*. We agree with this result.

In *Stephens v. Household Finance Corp.* (Okla. 1977), 566 P.2d 1163, the Oklahoma court faced the identical question. The court noted that the Oklahoma statute permitting counterclaims was quite similar to the Illinois statute. The court then cited *Wood* and adopted *Wood's* reasoning. In dealing with section 130(h), the court held that it did not affect the rationale in *Wood*.

"Reading §1640(h) in conjunction with the balance of the Act, we are convinced this amendment was directed to a situation wherein a debtor attempts to evade payment on a note by deducting the Act's penalty from his payment without a judicial determination of the liability of the lender.

Although we agree with Household that §1640(h) requires a judicial determination of liability, the state action serves this

purpose. Liability under the Act will be determined by the judgment of the court in the action wherein the set off or counterclaim is alleged, after lender, as a party to the lawsuit, has had an opportunity to be heard, and defend against the claim. The court will set off any adjudicated penalty against the debt.

We therefore hold §1640(h) does not apply to a claim under the Act used as a defense or counterclaim in an action on a note." *Stephens v. Household Finance Corp.* (Okla. 1977), 566 P.2d 1163, 1166.

■■ While we realize that there have been decisions to the contrary (see, *e.g., Shannon v. Carter* (1978), 282 Or. 449, 579 P.2d 1288; *Ken-Lu Enterprises, Inc. v. Neal* (1976), 29 N.C. App. 78, 223 S.E.2d 831), we believe that permitting the Riddles' counterclaim is most consonant with Congress' intent in passing TILA and Illinois precedent. As the court stated in *Wood*, barring a defense or counterclaim under section 1640(e) in the same manner as a separate action would reward the unscrupulous lender by giving him a reason to delay a suit on a note for one year so that violation of the Act could not be used against him.

Having decided that the Riddles are entitled to bring a counterclaim, we must next address the problem of damages. Under TILA, the measure of damages is fixed as twice the finance charge, but not less than $100 nor more than $1,000. (15 U.S.C. §1640(a).) The trial court found the net amount of statutory damages for violation of the Illinois statute to be $1,747.60. The court also awarded attorney's fees of $500 and reduced the total amount by $1,142.70, the balance due on the December 8, 1969 loan. The trial court, however, declined to award the Riddles any damages for the violation of TILA, saying, "The same is duplicitous with the Illinois Act, on which violations were found."

This holding was based on *Ninth Liberty Loan Corp. v. Hardy* (1977), 53 Ill. App. 3d 601, 368 N.E.2d 971. In that case, the final paragraph of the opinion contained a statement to the effect that the remedies afforded by the Illinois and Federal acts were duplicitous and not cumulative. However, no authority was cited for this statement, and we believe that it does not accurately state the law. If *Ninth Liberty* were to be followed, then consumers would be forced to elect between State and Federal remedies. There is nothing to indicate that Congress intended to force consumers to elect their remedy. In fact, section 111 of TILA (15 U.S.C. §1610 (1976)) specifically states that TILA "* * * does not annul, alter, or effect, or exempt any creditor from complying with, the laws of any State relating to the disclosure of information in connection with credit transactions * * *." This, and subsequent sections, clearly show an intent to create parallel remedies, Federal and State. Other jurisdictions have held that provisions of a contract can

violate both State law and TILA and have permitted the sanctions of both acts to be applied. For example, in *Ballew v. Associates Finance Services Co.* (D. Neb. 1976), 450 F. Supp. 253, the court held that provisions of a contract violated both State and Federal law and awarded damages under TILA and barred the lender from collecting or receiving interest as provided for in the Nebraska Small Loan Act.

■■ Further, in *Hernandez v. Kerry Buick, Inc.*, CCH 1977 Consumer Credit Guide, par. 98, 904 (N.E. Ill., Oct. 18, 1977), the court held that a customer could recover under both TILA and the Illinois Motor Vehicle Retail Installment Sales Act (Ill. Rev. Stat. 1975, ch. 121½, par. 561 *et seq.*) for the same failure to disclose financing terms. We believe the Illinois Motor Vehicle Retail Installment Sales Act is similar enough to the Large Loan Act to apply *Hernandez.* In view of the purpose of the statute, its wording, and resulting case law, we believe that a consumer may recover damages under both TILA and the Large Loan Act. Since the finance charge for the December 8, 1969, loan is $580.55, twice that would be more than $1,000. Therefore, under TILA the Riddles are entitled to $1,000 in damages.

The final issue is whether the Riddles are each entitled to $1,747.60 under the Large Loan Act and $1,000 under TILA or whether they may only recover once between them. The Riddles argue that the duty of the creditor ran to each obligor and, therefore, each of them should recover a separate penalty. Public contends that the Riddles took the loan as one entity and should recover only one penalty. Cases dealing with this problem under TILA have gone both ways. For example, *Mirabal v. General Motors Acceptance Corp.* (7th Cir. 1976), 537 F.2d 871, and *Allen v. Beneficial Finance Co.* (N.D. Ind. 1975), 393 F. Supp. 1382, have held that where a husband and wife enter into a credit transaction together, each should recover separately. On the other hand, *Powers v. Sims & Leven* (4th Cir. 1976), 542 F.2d 1216, and *Saint Marie v. Southland Mobile Homes, Inc.* (E.D. La. 1974), 376 F. Supp. 996, have held that there should be only one recovery.

■■ We believe that there should be only one recovery. While the statute does read that creditors are liable to "any person," we believe that to allow separate recoveries here is to ignore the realities of the situation. The plaintiffs here are husband and wife. They entered into the loan and received the faulty disclosure statement as a family unit, rather than as separate entities. Therefore, we believe there should be a single recovery. A different result might be reached if the interests of the obligors conflicted or if they were two individuals, each paying part of the purchase price and finance charges out of separate funds. However, such is not the case before us, and we believe that there should be only one recovery.

For the abovementioned reasons, the judgment of the circuit court of Knox County is affirmed in part and reversed in part and remanded to the circuit court to enter judgment on the counterclaim for the violation of the Federal statute.

Affirmed in part and reversed and remanded in part.

ALLOY, P. J., and SCOTT, J., concur.