**In re Larry STONEKING and Sharon Stoneking, Debtors.**

**Larry STONEKING, Sharon Stoneking, and Richard E. Barber, Chapter 7 Trustee for Larry Stoneking and Sharon Stoneking, Plaintiffs,**

v.

**USA FINANCIAL SERVICES, INC., Defendant.**

**Bankruptcy No. 87–81970.
Adv. No. 88–8247.**

United States Bankruptcy Court,
C.D. Illinois.

May 10, 1989.

Barry M. Barash, Galesburg, Ill., for debtors.

Richard E. Barber, Galesburg, Ill., Trustee.

Kevin D. Schneider, Peoria, Ill., for defendant.

## OPINION

WILLIAM V. ALTENBERGER, Bankruptcy Judge.

On March 27, 1987, the Debtors borrowed $2,988.37 from the Defendant. The security agreement portion of the Note provided as follows:

## SECURITY AGREEMENT

To secure the payment of the above described loan to the undersigned, Debtor(s) grant(s) a security interest to the Secured Party in the personal property described below, or in an Appendix A

listing attached thereto. This Security Agreement will secure future advances, and shall include property of the same type as the below-described items acquired by the Borrower(s) within 10 days from the date hereof, or in the event of future advances, all such items acquired by Borrower(s) from the date hereof to a date which is 10 days from the date of any future advances.

☐ This loan is secured by a mortgage(s) on real estate of even date herewith (or _____).

☒ Consumer goods located at Borrower's above address. This Security Agreement will include any specific items which may be listed below.

☒ See Schedule A

☐ Motor Vehicle

☒ Other (describe) wage assignment and all accessions to and proceeds from the described collateral.

The Truth–in–Lending Disclosure Statement provided in part as follows:

*Security*

You are giving a security interest in:

☐ The goods or property being purchased

☐ Motor vehicle

☒ Your wage assignment, tent, weight set, golf clubs, stereo, RCA T.V. Quasar VCR, guitar, hand tools, lawn mower,

Real estate located at <u>none</u>

The Debtors filed a Chapter 7 proceeding in bankruptcy and then filed an adversary complaint against the defendant alleging the Disclosure Statement violated the Truth–in–Lending Act, specifically, Section 128(a)(9), 15 U.S.C. Section 1638(a)(9), and the Truth–in–Lending Regulations, Regulation Z, specifically Section 226.18(m), and Section 226.17(a)(1).[1] The Debtors' specific charge is that the Security Agreement gives the defendant a broad right to claim a security interest in consumer goods located at the Debtors' residence, while the Disclosure Statement only reveals a limited security interest in specific items. The

1. The *Truth–in–Lending Regulations, Regulation Z*, can be found at 12 CFR, Section 226.18, 17(a); 15 USCA, following Section 1700.

Debtors contend this documentation gives rise to a twofold violation of Truth–in–Lending. First, that Section 226.18(m) has been violated because it requires disclosure of the security interest by item or type, and the disclosure of the security interest is limited to specific items and does not track when compared to the broad grant of security found in the Security Agreement. Second, the Disclosure Statement is not clear and conspicuous as required by Section 226.17(a).

■ The defendant contends first, that the language "Consumer goods located at Borrower's above address" is not intended to create a security interest in all the Debtors' consumer goods, but was used in compliance with the mandates of Truth–in–Lending and that the language was restricted and limited by the language immediately following it, i.e. "This Security Agreement will include any specific items which may be listed below" and the box situated below that statement which was checked and contained the language, "See Schedule A", and Schedule A and the Federal disclosure Statement track one another identically.

Section 128(a)(9) of the Truth–in–Lending Act; 15 U.S.C. Section 1638(a)(9) provides as follows:

> For each consumer credit transaction other than an open end credit plan, the creditor shall disclose each of the following items, to the extent applicable: ... (9) where the credit is secured, a statement that a security interest has been taken in ... (B) property not purchased as part of the credit transaction identified by item or type....

Section 226.18 of Regulation Z provides in part as follows:

> For each transaction, the creditor shall disclose the following information as applicable:
>
> . . . . .
>
> (m) *Security Interest.* The fact that the creditor has or will acquire a security interest in the property purchased as part of the transaction or in other property identified by item or type.

The tracking issue presented in this case has been ruled upon by the Seventh Circuit Court of Appeals, the District Court for the Central District of Illinois, and this Court, in a variety of factual situations. In all these cases, these courts have required the Disclosure Statement to track the security interest granted by the security agreement. *Bulger v. Thorp Credit, Inc., of Illinois,* 609 F.2d 1255 (7th Cir.1979); *Teel v. Thorp Credit, Inc., of Illinois,* 609 F.2d 1268 (7th Cir.1979); *In re Peacock, Richard E. Barber, Trustee, v. USA Financial Services, Inc., f/k/a Heights Finance Corporation,* 101 B.R. 22 (C.D.Ill.1989); *Doubet v. USA Financial Services, Inc., f/k/a Heights Finance Corporation,* 714 F.Supp. 980, 985–86 (C.D.Ill.1989). In *Doubet* the District Court stated:

> Comment 18(m)–4 of the official staff commentary under Regulation Z provides that an after-acquired property clause is not a security interest to be disclosed under Section 226.18(m), but this does not end the Court's analysis. The language from the Note and Security Agreement which was checked by the creditor reads: "Consumer goods *now owned* or hereafter acquired within 10 days of the date of this loan ..." (emphasis added). Giving meaning to all of the words used in that phrase, the Court finds that this language is not an after-acquired property clause; even though it does indicate that a security interest would be taken in after-acquired property, the language also makes clear that the security interest extends to consumer goods *now owned.* Only a very strained interpretation of this provision could result in the conclusion that this was nothing more than an after-acquired property clause, and the Court finds that this provision grants a security interest in the Plaintiffs' consumer goods which is much broader than that described in the Federal Disclosure Statement.

The facts of the case presently before this Court are similar to those in *Peacock,* in that the security agreement grants a broader security interest than that disclosed in the Disclosure Statement.

The Defendant argues that a proper interpretation of the questioned language leads to the conclusion the language of the two documents track. The Defendant's position is not well taken. A plain reading of the Security Agreement indicates that the defendant was taking the security interest in consumer goods located at the Debtors' address, *including* (our emphasis) any items described in Schedule A. By using the word "include", a proper interpretation of the Security Agreement would be that the security interest covered more than just the items listed on Schedule A.[2] If the security interest was to be limited to those items listed on Schedule A, then appropriate language would have been "Consumer goods located at Borrower's above address. The security agreement will be limited to the specific items which may be listed below." As the Security Agreement grants a broader security interest in consumer goods other than those listed on Schedule A, and as the Disclosure Statement only lists those items shown on Schedule A, the Disclosure Statement does not track with the Security Agreement, and Section 226.-18(m) of Regulation Z has been violated.

In the alternative, the Defendant contends that it intended to take a security interest in only those specific items which are listed on Schedule A, that the language is ambiguous and susceptible to more than one meaning and therefore a question of fact exists as to the intent of the parties. The answer to that contention is simply that once sued for a Truth–in–Lending violation, a creditor cannot argue that its intent was contrary to a plain reading of the documentation, and this Court does not find the language to be ambiguous and susceptible to more than one meaning. The language is clear that the security interest is being taken in consumer goods located at the Debtors' address, including those items listed on Schedule A.

█ The Defendant also contends that the disclosure was the result of a bona fide

error, therefore the Defendant is entitled to the bona fide error defense provided by Section 130(c) of the Act, 15 U.S.C. Section 1640(c), which provides as follows:

(c) A creditor or assignee may not be held liable in any action brought under this section or section 125 for a violation of this title if the creditor or assignee shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error. Examples of a bona fide error include, but are not limited to, clerical, calculation, computer malfunction and programing, and printing errors, except that an error of legal judgment with respect to a person's obligations under this title is not a bona fide error.

This defense is not available to the Defendant, as it pertains to clerical errors such as those occurring in billing or in making mathematical calculations, and cannot be maintained by a creditor who fails to accurately describe a security interest. *In re Sherman,* 13 B.R. 259 (Bkrtcy.R.I.1981). *See also Partridge v. Alaimo,* (DC Conn. 1982) CCH, Consumer Credit Guide, para. 96,936.

█ Finally, the Defendant contends that the questioned language was used by the Defendant in order to avoid violating the Federal Trade Commission's Credit Practices Rule, which prohibits a non-purchase money security interest in "household goods", as defined within that Rule.[3] Specifically, the Defendant argues the use of the *type* or category "household goods" suggested in the Comments to Truth–in–Lending without itemizing the property would lead to liability under the Credit Practices Rule, and to avoid this result, many lenders utilize a document such as Schedule A to specifically identify and list the items of property which also contains a disclaimer that no items of personal proper-

---

2. The word "include" is defined as "to take in, enfold, or comprise as a discrete or subordinate part or item of a larger aggregate, group, or principle." Webster's Third New International Dictionary 1143 (1976).

3. The Federal Trade Commission's Credit Practices Rule can be found at 16 CFR Part 444. See also CCH Consumer Credit Guide, para. 10,471.

ty prohibited by the Credit Practices Rule will be included in the security interest. The Defendant concludes by stating if the subject language is construed so as to create a security interest in "all consumer goods" then the Security Agreement would be in violation of the Credit Practices Rule.

This defense is a red herring. The FTC's Federal Credit Practices Rule defines "Household goods" as being

> Clothing, furniture, appliances, one radio and one television, linens, china, crockery, kitchenware, and personal effects (including wedding rings) of the consumer and his or her dependents, provided that the following are not included within the scope of the term "household goods":
>
> (1) Works of art;
>
> (2) Electronic entertainment equipment (except one television and one radio);
>
> (3) Items acquired as antiques; and
>
> (4) Jewelry (except wedding rings).

and then goes on to make it an unfair credit practice for a lender to directly or indirectly take or receive from a consumer an obligation that constitutes or contains a non-possessory security interest in household goods other than a purchase money security interest.

Section 226.18(m) permits a disclosure of a security interest by item or type. One of the official comments to Section 226.18 points out the problem with describing collateral by type and using the term "household goods". It reads as follows:

> Non-purchase money transactions. In non-purchase money transactions, the property subject to the security interest must be identified by item or type. This disclosure is satisfied by a general disclosure of the category of property subject to the security interest, such as "motor vehicles," "securities," "certain household items," or "household goods." (Creditors should be aware, however, that the federal credit practices rules, as well as some state laws, prohibit certain security interests in household goods.) At the creditor's option, however, a more precise identification of the property or goods may be provided.

A similar problem exists by using the term "Consumer Goods".

It is apparent that in preparing the Security Agreement and the disclosure under Section 226.18, a creditor must be careful not to violate the Credit Practices Rule by taking a security interest in nonpermissible collateral. The drafting problem is not insurmountable, and with a little thought and a little care, it is possible to draft both a Security Agreement and a Disclosure that comply with Truth–in–Lending without violating the Credit Practices Rule. The Defendant's own argument suggests one approach through the use of a disclaimer. Another approach is suggested by the official comments through the use of a precise identification. The Defendant failed to do either. Certainly just as it would not be appropriate to contend that the Credit Practices Rule can be violated in complying with Truth–in–Lending, it is not appropriate to contend that Truth–in–Lending can be violated in order to comply with the Credit Practices Rule.

THEREFORE, this Court finds that judgment should be entered in favor of the Debtors and against the Defendant in the amount of $1,000.00, plus reasonable attorney's fees to be determined by this Court, and costs.

Because this Court finds that the Defendant has violated the disclosure requirements of Truth–in–Lending under Section 226.18(m), this Court need not decide the question of whether the Defendant violated Section 226.17(a)(1) which requires federal disclosures to be made clearly and conspicuously.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.